Scofield, J.,
delivered the opinion of the court:
■ ’..Daniel A. Connolly, in his life-time, had a large number of written contracts with the District of Columbiafor the improvement of the streets-of Washington. His administrator brings this.snit.to .recoyer-alleged balances due on eleven of these . contracts, with their so-called extensions.
In the three other suits, consolidated and tried with this one, the claims are based upon assignments from Connolly of portions of such balances.
The claims of Eslin, administrator of Connolly, as set forth 'in his petition, may be tabulated as follows :

- The balances.claimed upon contracts Nos.'209, 231; and 1035 are admitted to be due, and amount to $244.18. The balance claimed on contract No. 828 is found to have be,en paid. These four contracts, therefore, are taken out of controversy.
The original contract, No. 243, stipulates that the price of grading shall ’be30 cents a cubic yard, including 200 feet- of “ haul,” and all hauling beyond that, 1 cent for every 200 feet. As the work progressed, partial measurements and payments *400 were made from time to time at these rates. Subsequently, beginning with December 5, 1873, are four partial measurements, on which the extra haul was reckoned at l-J cents for every 100 feet. This change in reckoning makes a difference in favor of the claimant of $8,413.55. The computation was made by the District auditor or engineer, and the three last payments made through the Board of Audit.
The change in the rate of payment was, doubtless, made in pursuance of two orders by the Board of Public Works, as follows :
“July 15, 1873.— Auditor was notified that the price for hauling earth has been established at cents per cubic yard for every 100 feet of haul over first 200 feet, since June 1,1873. Contract clerk so notified.-
“ September 27,1873. — J. C. Lay, auditor, was notified that in settlements of accounts for extra haul, that one and one-quarter cents per cubic yard for each additional 100 feet beyond the first 200 feet for ali work done since January 1, 1873, will be allowed.”
These orders came to be called Board rates.
Did these orders to the auditor authorize, the claimant legally to demand or bind the District to pay more than the written contract provided for?
This question has been so fully discussed in the recent opinion of the Chief Justice in the case of Barnes v. The District of Columbia (ante) that it is unnecessary to go over the ground again.
We held in these cases, as we held there, that these orders do not change the written contracts between the parties made before the orders were issued, and much less contracts made thereafter.
These higher rates having been allowed and paid by the Board of Audit, can the District recover back the excess? That question is also decided in the Barnes case in favor of the District. The question, however, does not properly arise under this particular contract. The work has never been fully settled. All payments made were only partial payments. In any event, there is still a balance due the claimant. The question rather is, whether in a final settlement the District shall be credited with all money actually paid. That it should be so credited we have no doubt.
*401 The same questions arise under contracts Nos. 349, 595,1057-J, 665, and 1028, and must be ruled in the same way.
Additional questions are presented in some of these cases.
On the same voucher some grading is computed at 30 cents and some at 40 cents; some of the extra haul at the contract rate and some at Board rates. This fact, coupled with the fact that the District was not able to cash the auditor’s certificate, is enough, the claimant argues, to support a legal presumption that part of the grading was on old graveled streets, and part of the haul was outside the contract. All the other surrounding facts seem to be adverse to such a presumption. No mention or reference is made of grading on old graveled streets or of work done outside the contract, either in the measurements, computations, or receipts. All are stated as if done under the contract. Even if it could be assumed that part of the grading was done on old graveled streets, it is not at all certain that the claimant would be entitled to recover 40 cents a cubic yard.
It is true that in September, 1871, the Board prescribed the rate of grading old graveled streets to the depth of 2 feet to be 40 cents a cubic yard, but at the same time they prescribed the rate of other grading at 20 cents. In January following they revised the price list and established the average rate of grading at 30 cents, without exception or mention of graveled streets. This contract was made in the following June.
In contract No. 1028 below the clause which fixes the price of grading and haul are these words: “Grading of old graveled streets for first — per cubic yard — cents.” The contract is drawn on a printed blank. No effect can be given to the words quoted. If any inference were to be drawn from them, it would be that no grading on graveled streets was. in contemplation. There is no evidence, unless presumed from the amount paid, that any was done.
Contract No. 690 provided for certain work to be done across two blocks on First street east. The work was done, and a similar kind of work was done at the same time across three additional and adjoining blocks. (Finding IX.) The haul on the whole five blocks was reckoned at Board rates. So far as the extra work was concerned, that was right, but the work on the two blocks named in the contract, according to the forego *402 ing ruling, we have reckoned according to the terms therein prescribed.
Applying these rulings to the facts as found, the following results appear:
On contracts No. 209, 231, and 1035 there is due Connolly....... $244.18
On contract No. 243 and extensions, with the Hussey assignment ....................................................... 936.40
On contract No. 349........................................ 2.51
On contract No. 1028.......................................... 1,645.09
Total........................................r_.......... 2,828.18
Overpayments to Connolly on—
Contracts Nos. 595 and 1057, made January 27, 1875........ $173.35
Contract No. 665, made February 9, 1875 .................. 1,012.37
Contract No. 690, made December 31, 1873 ................. 2,300.51
Total................................................... 3,486.23
Leaving a balance in favor of the District of $658.05.
The additional counter-claim consists of overpayments on contracts No. 447, 527, and 693 made, not to the claimant, but to Albert Gleason, assignee. The assignment does not specify any particular amounts assigned, but only all claims that may be allowed by the Board of Audit. It does not appear that Connolly ever received the money or derived any benefit therefrom. We do not see upon what principle an assignor is chargeable with overpayments which he neither authorized nor received. (United States v. Jones, 8 Pet., 387.)
The counter-claim must be dismissed.
By a careful comparison of the dates of the papers under which the rights of the claimants in cases Nos. 150,162, and '280 originated, with the dates of the overpayments, it appears that Connolly during all that time was indebted to the District. It is true that upon a settlement of some of the assigned contracts balances are now found to have been due to Connolly, but these balances could not be assigned so as to escape the set-off of balances then existing on other contracts in favor of the District.
In the cases Nos. 150, 162, and 280 the petitions are dismissed, and in No. 375 judgment will be entered in favor of the defendant in the sum of $658.05.